UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

# 05 CV 3706

| | |
|---|---|
| MILESTONE SCIENTIFIC INC., INTERNATIONAL MEDIA ENTERPRISE D/B/A UNITED SYSTEMS, INC., AND IONIC WHITE, INC. ) ) ) ) ) ) ) | CIVIL ACTION NO.    **Case No. 05cv3706 (Owen) ECF CASE** |
| Plaintiffs, ) ) | **COMPLAINT** |
| v. ) ) | Jury Trial Demanded |
| TELEBRANDS CORPORATION, INVENTION CHANNEL, INC. AND AJIT KHUBANI, ) ) ) ) | APR 1 1 2005 |
| Defendants. ) ) | U.S.D.C. S.D. N.Y. CASHIERS |

## INTRODUCTION

Plaintiffs, by their attorneys Brown Rudnick Berlack Israels LLP, for their Complaint against the above-named defendants, respectfully allege as follows:

By this action, Plaintiffs seek to enjoin Defendants known, "scam artists", from continuing to palm off their products as those of Plaintiffs, and prevent the ongoing infringement of Plaintiff Milestone Scientific Inc.'s ("Milestone"), well-known and distinctive trade dress for teeth whitening devices, which is protected under federal and state statutes, and the common law. Plaintiff International Media Enterprise d/b/a United Systems ("United") enjoys the right to use Milestone's proprietary teeth whitening device under license, and to manufacture and distribute such teeth whitening devices. Plaintiff Ionic White Inc. ("Ionic White") enjoys the right to use Milestone's proprietary teeth whitening device under license and distribute such teeth whitening devices.

1

Defendants Telebrands Corporation ("Telebrands"), Invention Channel, Inc. ("Invention Channel") and Ajit Khubani ("Khubani", and collectively with Telebrands and Invention Channel, the "Defendants") sell various products through infomercial ads, print ads in general circulation newspapers, on the world wide web and through broadcast ads.

As shown herein, Defendants have intentionally and wrongfully engaged in unfair competition by making, advertising and selling teeth whitening devices that have an appearance virtually identical to Milestone's distinctive trade dress and they have misappropriated the benefits of Milestone's trade dress. Defendants wrongful conduct violates federal and state statutes, and Milestone's rights.

Defendants have a long history of palming off and stealing other people's ideas. The wrongful acts of Defendants complained of herein are part of a continuing pattern by Defendants to violate federal and state rules designed to prohibit this very conduct. In fact, in 2003, Defendants were charged by the United States Federal Trade Commission ("FTC") with making false claims through misleading infomercials, as disclosed in an FTC News Release displayed at the following URL: www.ftc.gov/opa/2003/10/abforce.htm, and shown in the attached Exhibit A. This is the same type of false and misleading conduct that Defendants engaged in here, and that Plaintiffs seek to enjoin.

Khubani has been charged at least three times with violating the Mail or Telephone Order Merchandise Rule ("Mail Order Rule") of the FTC, and Telebrands has been charged at least twice, as disclosed in an FTC News Release displayed at the following URL: www.fte.gov/opa/1999/09/telebrands2.htm, and shown in the attached Exhibit B. In 1999, the FTC obtained an $800,000 civil penalty against Telebrands for violations of the FTC Mail Order Rule. In 1990 and 1996, the FTC obtained consent judgments prohibiting Khubani and his

corporations from violating the Mail Order Rule and requiring them to pay penalties of $35,000 (1990) and $95,000 (1996).

Telebrands and its owner, Khubani, also have been charged repeatedly by the FTC with making false claims in the marketing and sale of numerous products. In 1996, the FTC obtained an administrative order prohibiting Khubani and Telebrands from violating the FTC Act in connection with the marketing of television antennas and hearing aids, as discussed in the FTC News Release displayed at the following URL: www.ftc.gov/opa/2003/10/abforce.htm and shown in the attached Exhibit A.

Notwithstanding these various court and other orders obtained by the FTC, these Defendants have continued their unlawful conduct with respect to Milestone's trade dress and will likely continue to do so unless this Court acts to enjoin them.

## PARTIES AND JURISDICTION

1.    Plaintiff Milestone is a corporation organized and existing under the laws of Delaware with a principal place of business at 220 South Orange Avenue, Livingston Corporate Park, Livingston, New Jersey 07039. Milestone develops, manufactures, markets and sells dental equipment and related disposable and consumable items and other products. Milestone's common stock is publicly held and its shares are listed on the American Stock Exchange.

2.    Plaintiff United Systems is a corporation organized and existing under the laws of California with a principal place of business at 1405 W. Pioneer Street, Brea, California 92821.

3.    Plaintiff Ionic White is a corporation organized and existing under the laws of New York with a principal place of business at 36 West 44th Street, Suite 1100, New York, New York 10036.

4. Upon information and belief, Defendant Telebrands is a New Jersey corporation with a principal place of business at 79 Two Bridges Road, Fairfield, New Jersey 07004 Telebrands is doing business in and has caused tortious injury in the State of New York.

5. Upon information and belief, Defendant Invention Channel is a corporation with a principal place of business at P.O. Box 4525, Pacoima, CA 91333 . Invention Channel is doing business in and has caused tortious injury in the state of New York.

6. Upon information and belief, Defendant Khubani resides in the state of New Jersey. Khubani is doing business in and has caused tortious injury in the state of New York.

7. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § § 1331 and 1338 (a) and (b).

8. Venue is proper in this Court pursuant to 28 USC § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this jurisdiction.

## FACTS

9. Milestone develops, manufactures, markets and sells dental teeth whitening equipment in the dental market. Milestone spent many years and millions of dollars establishing its market presence in the dental sector, and spent substantial sums of money to develop its own tooth whitening system. In March 2005, Milestone launched its Ionic White™ tooth whitening system, through Ionic White, to the consumer segment of a $1 billion-plus U.S. tooth whitening market via television infomercials that aired in 23 markets throughout the United States, including New York. The Ionic White™ system whitens and brightens all tooth surfaces within approximately 21 minutes in an easy-to-use home kit that includes a unique intra-oral colored

light device and proprietary gel. As of March 21, 2005, approximately 500,000 units of the Ionic White™ tooth whitening system have been ordered from Milestone.

10. Milestone's Ionic White™ tooth whitening system includes the colored light intra-oral device, which incorporate Milestone's trade dress. The high volume of orders in a short amount of time reflects Milestone's long-standing reputation for quality and reliability in the dental market, as well as the time, effort and money invested to develop Milestone's Ionic White™ tooth whitening system.

11. The quality and reliability of Milestone's Ionic White™ tooth whitening system is associated with, represented by and intimately bound up with Milestone's colored light intra-oral device's distinctive appearance and trade dress. A true and accurate depiction of Milestone's Ionic White™ tooth whitening system, showing the well known and distinctive appearance and trade dress of the Milestone's colored light intra-oral device as displayed at the following URL: www.ionicwhite.com, and shown in the attached Exhibit C.

12. Milestone's distinctive trade dress is non-functional, and consists of the overall shape of its colored light intra-oral device. It includes certain distinctive features including a white, rounded handle/body and a translucent bite surface, which emits a unique colored light upon activation. The overall appearance and design of the Milestone's colored light intra-oral device is protected under federal and state statute, and the common law.

13. Milestone's trade dress is readily recognized and well-known to Milestone's distributors and end customers, and is associated with only one source, Milestone – in other words, it is distinctive to Milestone.

14.     United Systems has an exclusive license to use, manufacture, market, distribute and sell Milestone's proprietary teeth whitening product by means of a License Agreement dated October 20, 2004. Ionic White has a license to distribute Milestone's proprietary teeth whitening product.

15.     Ionic White spent significant time, money and effort in the preparation and broadcast of infomercials for using Milestone's Ionic White™ tooth whitening system. Those infomercials were prepared, in part, in New York.

16.     Infomercials advertising Milestone's Ionic White tooth whitening system began broadcasting on television throughout the United States, including New York, on March 12th and March 13th, 2005.

17.     Almost immediately after the Milestone infomercials were broadcast, Defendants began their illegal scheme to palm them off as their own. On or about April 1, 2005, Milestone became aware that Defendants had begun advertising and offering for sale a "WhiteLight" teeth whitening device, depicted on the attached Exhibit D. Defendants advertising and offer for sale includes airing of a television commercial, which was broadcast throughout the United States including New York, and similar promotion at the following URL: www.whitelight.com.

18.     The design of the "WhiteLight" teeth whitening device depicted in Ex. D is substantially similar (indeed, virtually identical) to, and likely to be confused with, Milestone's well-known appearance and distinctive trade dress. Defendants have wrongfully copied Milestone's colored light intra-oral device appearance and trade dress and advertised the teeth whitening device depicted in Ex. D as an equivalent to Milestone's colored light intra-oral device, to trade on the value of Milestone's reputation and goodwill. In effect, Defendants have

continued their illegal pattern of knocking or palming off other people's products as their own and must be stopped.

## COUNT I

### (Trade Dress Infringement)
### 15 U.S.C. § 1125(a)

19.    Plaintiffs incorporate by reference paragraphs 1 through 18 as if separately set forth herein.

20.    By making and marketing teeth whitening devices with an appearance virtually identical to Milestone's distinctive trade dress, Defendants are making a false, express or implied representation that Defendants' teeth whitening devices are from or associated with Plaintiffs.

21.    Defendants' conduct constitutes false descriptions or designations of fact within 15 U.S.C. § 1125(a).

22.    Defendants' conduct has caused and will cause Plaintiffs substantial and irreparable injury, harm to their reputation and economic loss.  Unless enjoined, Defendants likely will continue their conduct.

23.    Plaintiffs have no adequate remedy at law.

## COUNT II

### (Palming Off)

24.    Plaintiffs incorporate by reference paragraphs 1 through 23 as if separately set forth herein.

25.    On information and belief, Defendants are intentionally trying to palm off Defendants' teeth whitening devices as those of Plaintiffs.

26.    Defendants' acts and conduct as set forth above constitute tortious palming off.

27.    The acts and conduct of Defendants as described herein have caused and will cause Plaintiffs substantial and irreparable injury, harm to its reputation and economic damage. Unless enjoined, Defendants will likely continue their conduct.

28.    Plaintiffs have no adequate remedy at law.

## COUNT III
### (Common Law Trade Dress Infringement)

29.    Plaintiffs incorporate by reference paragraphs 1 through 28 as if separately set forth herein.

30.    Milestone has a distinctive trade dress in the design and appearance of Milestone's Ionic White™ tooth whitening system, including its Ionic White™ colored light intra-oral device.

31.    The design and appearance of the Defendants' teeth whitening devices, depicted in the attached Ex. D, is likely to be confused with the design and appearance of the Milestone Ionic White™ colored light intra-oral device.

32.    Defendants' have intentionally and wrongfully copied the appearance of the Milestone Ionic White™ colored light intra-oral device in an attempt to appropriate for themselves the goodwill associated with the Milestone Ionic White™ colored light intra-oral devices' well-known appearance.

33.    Defendants' actions constitute common law trademark infringement.

8

34.     Defendants' actions have caused and will cause Plaintiffs substantial and irreparable injury, loss of reputation and economic damages.  Unless enjoined, Defendants will likely continue these acts.

35.     Plaintiffs have no adequate remedy at law.

COUNT IV

(Trade Dress Dilution)
15 U.S.C. § 1125(c)

36.     Plaintiffs incorporate by reference paragraphs 1 through 35 as if separately set forth herein.

37.     Milestone Ionic White™ colored light intra-oral device trade dress is well known and famous within the meaning of 15 U.S.C. 1125(c).

38.     Defendants have made commercial use of Milestone's trade dress with the deliberate intent to trade on Plaintiff's reputation and to dilute the famous trade dress of the Milestone Ionic White™ colored light intra-oral device.

39.     Defendants' use of the Milestone trade dress has caused, and is likely to further cause, dilution of the distinctive quality of the Milestone trade dress.

40.     On information and belief, the Defendants' teeth whitening devices are of lesser quality than Milestone Ionic White™ colored light intra-oral devices, and Defendants' customer service with regard to its teeth whitening devices is of lesser quality than Milestone's customer service with respect to Milestone's Ionic White™ colored light intra-oral devices.  Accordingly, Defendants' use and infringement of Milestone's trade dress will likely tarnish the reputation associated with Milestone's trade dress.

41.     Milestone's trade dress is likely to be both diluted and tarnished by Defendants' activities.

42.     Defendants' conduct as described herein, has caused and will cause Plaintiffs substantial irreparable harm.  Unless enjoined, Defendants will likely continue their conduct.

43.     Plaintiffs have no adequate remedy at law.

## COUNT V

(Injury to Business Reputation and
Trade Dress Dilution – State Law)
New York General Business Law § 360-L

44.     Plaintiffs incorporate by reference paragraphs 1 through 43 as if separately set forth herein.

45.     Defendants' acts and conduct as set forth above constitute trade dress dilution and have caused, and are likely to cause, injury to Plaintiff's business reputation, as prohibited by N.Y. Gen. Bus. L. s. 360-L.

46.     The acts and conduct of Defendants as described herein have caused and will cause Plaintiffs substantial and irreparable injury, harm to its reputation and economic damage. Unless enjoined, Defendants will likely continue their conduct.

47.     Plaintiffs have no adequate remedy at law.

## COUNT VI

(Accounting)

48.     Plaintiffs incorporate by reference paragraphs 1 through 47 as if separately set forth herein.

49.     In light of the acts and conduct of Defendants as described herein, Plaintiffs are entitled to an accounting from Defendants regarding all sales and purchase orders relating to the advertising and offering for sale of the "WhiteLight" teeth whitening device depicted on the attached Exhibit D, the receipts, incomes, revenues and/or profits received therefrom or in connection therewith, or other receipts, incomes, revenues and/or profits paid to or received by Defendants, or any of their affiliates, designees or nominees, that in any way arose from the advertising and offering for sale of the "WhiteLight" teeth whitening device.

50.     Plaintiffs have no adequate remedy at law.

## COUNT VII
### (Receivership of Defendants)

51.     Plaintiffs incorporate by reference paragraphs 1 through 50 as if separately set forth herein.

52.     In light of the acts and conduct of Defendants as described herein, a receiver over Defendants' property is necessary.

53.     If a receiver is not appointed, the Plaintiffs will be irreparably harmed and will have no adequate remedy because the Defendants will have no unencumbered assets with which to satisfy Plaintiff's virtually certain judgment.

54.     Plaintiffs have no adequate remedy at law.

## COUNT VIII
### (Damages)

55.     Plaintiffs incorporate by reference paragraphs 1 through 54 as if separately set forth herein.

11

56.     In light of the acts and conduct of Defendants as described herein, Plaintiffs have been damaged in an amount to be determined by a trier of fact.

WHEREFORE, Plaintiffs request a preliminary and permanent injunction, damages in an amount to be determined by the trier of fact, and the ancillary relief set forth below.

## PRAYERS FOR RELIEF

1.     On Counts I through V, award judgment in favor of Plaintiffs and enter a preliminary and permanent injunction enjoining Defendants from making, marketing or selling the teeth whitening devices depicted in Ex. D or any other teeth whitening device with an appearance or design confusingly similar to Milestone's Ionic White™ colored light intra-oral devices;

2.     On Counts I through V, award judgment in favor of Plaintiffs and enter a preliminary and permanent injunction directing Defendants:

(a)     to send notice, in form and content acceptable to Plaintiffs, to any entity or individual to whom the defendants marketed and/or sold, and/or who received, the teeth whitening devices depicted in Ex. D or any other teeth whitening device with an appearance or design confusingly similar to the appearance or design of the Milestone's Ionic White™ colored light intra-oral devices, such notice to state (i) that the teeth whitening devices marketed and/or sold by Defendants are not products of Plaintiffs, and (ii), that injunction has issued by the Court, and the terms of the injunction,

(b)     to publicly broadcast a television commercial and/or infomercial, in form and content acceptable to Plaintiffs, to send notice to any entity or individual to whom the defendants marketed and/or sold, and/or who received, the teeth whitening devices depicted in Ex. D or any other teeth whitening device with an appearance or design confusingly similar to the appearance or design of the Milestone's Ionic White™ colored light intra-oral devices, such notice to state (i) that the teeth whitening devices marketed and/or sold by Defendants are not products of Plaintiffs, and (ii), that injunction has issued by the Court and the terms of the injunction; and

(c)     to deliver proof of such notice, as described in (a) and (b), to Plaintiffs.

3. On Count VI, enter judgment in favor of Plaintiffs and require an accounting from Defendants;

4. On Count VII, enter judgment in favor of Plaintiffs and appoint a receiver over Defendants' property;

5. On Count VIII, enter judgment in favor of Plaintiffs and award damages in an amount to be determined;

6. Award Plaintiffs their attorneys fees and other costs of suit; and

7. Award such other and further relief as the Court deems just and proper.


Respectfully submitted,

BROWN RUDNICK BERLACK ISRAELS LLP

By *Martin S. Siegel*

    Martin S. Siegel (MS9490)
    Peter B. Sorell (PS5394)

120 West 45th Street
New York, NY 10036
(212) 704-0100
Attorneys for Plaintiffs

Of Counsel:
Brian L. Michaelis
Brown Rudnick Berlack Israels LLP
One Financial Center
Boston, MA 02111


Dated: April 11, 2005

# Exhibit A

# FEDERAL TRADE COMMISSION
## FOR THE CONSUMER

Search: [                    ]   GO

**For Release**: October 1, 2003

**Related Documents:**

## Marketer of Electronic Abdominal Exercise Belt Charged with Making False Claims

*Telebrands Corp., TV*
*LLC, and Ajit Khuban*
022 3279, Docket No. !

### *FTC Alleges "Ab Force" Belt Won't Provide Rock-Hard Abs*

**Project Waistline**

Telebrands Corp., TV Savings LLC, and their owner, Ajit Khubani, have been charged by the Federal Trade Commission with making the same type of false claims in the marketing and sale of their "Ab Force" electronic muscle stimulation (EMS) belt as those the FTC targeted in "Project ABSurd." The FTC alleges in an administrative complaint announced today that the respondents, through their advertisements and promotional materials for the Ab Force belt, falsely claimed that the belt causes loss of weight, inches, and fat; causes well-defined abdominal muscles; and is an effective alternative to regular exercise.

In May 2002, as part of "Project ABSurd," the FTC challenged claims made by the marketers of three widely advertised EMS belts - the Ab Tronic, AB Energizer, and Fast Abs. The Commission alleged that the marketers of those products falsely advertised that users would get "six pack" or "washboard" abs without exercise. In July 2003, the FTC announced a settlement of over $5 million resolving the Fast Abs litigation. The Commission also announced that the U.S. district court in Nevada granted the FTC's motion for partial summary judgment against five of the seven Ab Tronic defendants, holding them liable for $83 million in redress. The AB Energizer case still is pending.

"There is no 'free ride' on misleading advertising," said Howard Beales, Director of the FTC's Bureau of Consumer Protection. "If you purposely evoke the false claims made for a similar product, then your ads also are deceptive. And you should expect to hear from the FTC."

The FTC's complaint, filed before an administrative law judge, alleges that the New Jersey-based respondents violated the FTC Act by representing that Ab Force could produce the same results touted in the deceptive infomercials for Ab Tronic, AB Energizer, and Fast Abs.

Those infomercials essentially claimed that users could achieve weight loss, fat loss, and inch loss, get well-developed abs, and obtain results that were equivalent to volitional exercise. The Ab Force ads show well-muscled, bare-chested men and lean, shapely women wearing Ab Force belts and purportedly experiencing abdominal contractions. The ads expressly referred to "those fantastic electronic ab belt infomercials on TV" that the announcer is "sure" the viewer has seen. According to the FTC's complaint, the Ab Force ads, including through references to the prior ab infomercials, falsely claimed that:

:: Ab Force causes loss of weight, inches, or fat;
:: Ab Force causes well-defined abdominal muscles; and
:: Use of Ab Force is an effective alternative to regular exercise.

### *Previous FTC Actions*

The FTC has taken four previous actions against Ajit Khubani and Telebrands. In 1990 and 1996, the Commission obtained consent judgments prohibiting Khubani and his corporations from violating the Mail or Telephone Order Merchandise Rule (Mail Order Rule) and requiring them to pay penalties of $35,000 (1990) and $95,000 (1996). In 1999, the FTC modified the existing 1996 consent judgment with the defendants and obtained penalties of $800,000 to resolve alleged violations of the Mail Order Rule. In addition, in 1996, the FTC obtained an administrative order prohibiting Khubani and Telebrands from violating the FTC Act in connection with the marketing of television antennas and hearing aids.

In an administrative trial, the FTC will seek to prohibit Telebrands, TV Savings, and Khubani from making any misrepresentations about Ab Force or any other EMS device. The FTC also will seek to prohibit them from making any unsubstantiated representations about weight, inch, or fat loss, muscle definition, or the health benefits, safety, or efficacy of Ab Force or any EMS device, or any food, drug, dietary supplement, device, or any other product, service, or program.

In addition, as set forth in the notice order, the FTC is seeking to require Khubani to obtain a $1 million performance bond before engaging in any manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any device. The notice order also includes various reporting requirements to assist the FTC in monitoring the respondents' compliance with its provisions. Finally, the notice order notes that the Commission may seek redress for consumers who purchased the Ab Force.

The Commission vote to issue the administrative complaint and notice order was 5-0.

**NOTE**: The Commission issues s a complaint when it has "reason to believe" that the law has been or is being violated, and it appears to the Commission that a proceeding is in the public interest. The complaint is not a finding or ruling that the respondents have actually violated the law. Such action marks the beginning of a proceeding in which the allegations will be ruled upon after a formal hearing.

Copies of the complaint and notice order are available from the FTC's Web site at http://www.ftc.gov and also from the FTC's Consumer Response Center, Room 130, 600 Pennsylvania Avenue, N.W., Washington, D.C. 20580. The FTC works for the consumer to prevent fraudulent, deceptive, and unfair business practices in the marketplace and to provide information to help consumers spot, stop, and avoid them. To file a complaint, or to get free information on any of 150 consumer topics, call toll-free, 1-877-FTC-HELP (1 877-382-4357), or use the complaint form http://www.ftc.gov. The FTC enters Internet, telemarketing, identity theft, and other fraud-related complaints into Consumer Sentinel, a secure, online database available to hundreds of civil and criminal law enforcement agencies in the U.S. and abroad.

MEDIA CONTACT:

Brenda Mack
*Office of Public Affairs*
202-326-2182

STAFF CONTACT:

Elaine Kolish or Constance Vecellio
*Bureau of Consumer Protection*
202-326-3042 or 202-326-2966

(FTC Matter No. 022 3279)

(http://www.ftc.gov/opa/2003/10/abforce.htm)

HOME | CONSUMERS | BUSINESSES | NEWSROOM | FORMAL | ANTITRUST | CONGRESSIONAL | ECONOMIC | I
Privacy Policy | About FTC | Commissioners | File a Complaint | HSR | FOIA | IG Office | En Español

# Exhibit B



**Federal Trade Commission**
600 Pennsylvania Avenue, NW
Washington, DC 20580

For Release: September 2, 1999

## FTC Obtains $800,000 Civil Penalty Against Telebrands Corporation for Alleged Violations of FTC Rule

### Defendants Also Agree To Pay For Compliance Monitor

A federal district court has granted the Federal Trade Commission's request to modify a 1996 consent decree that prohibits Telebrands Corporation and its president, Ajit Khubani, from violating the FTC's Mail or Telephone Order Rule. The modified order resolves FTC allegations that the defendants violated the rule and the 1996 order in numerous sales transactions after January 1, 1997, and routinely failed to comply with the recordkeeping provisions of the 1996 order.

The modified consent decree supersedes the 1996 order, enhances the recordkeeping requirements and requires the defendants to hire and pay the expenses of a monitor with expertise in mail or telephone order fulfillment. The monitor will audit defendants' records and procedures and report to the court and the FTC any violations of the rule and all steps that should be taken to bring the defendants' business practices into compliance. The modified consent decree also prohibits the defendants from violating the Mail Order Rule in the future and requires them to pay $800,000 in civil penalties. Telebrands and Khubani agreed to the modified order without admitting wrongdoing.

Telebrands Corporation, a mail/telephone order company based in Fairview, New Jersey, sells various products through print ads in general circulation newspapers and broadcast ads. This is the third time that Ajit Khubani has been charged with violating the Mail Order Rule and the second time that Telebrands Corporation has been charged. In 1990, Khubani and the company he was operating at that time, Direct Marketing of Virginia, Inc., also known as The Direct Connection, were charged with violating the Mail Order Rule and agreed to pay a $30,000 civil penalty. In 1996, the FTC reached a settlement with Khubani and Telebrands resolving charges that they violated the Mail Order Rule by failing to notify consumers about delays in shipping their orders, and by failing to cancel orders and make prompt refunds in instances where the company failed to ship the order on time or receive the consumer's consent to a delay. At that time, Telebrands and Khubani agreed to pay a $95,000 civil penalty.

The Mail or Telephone Order Merchandise Rule requires a company that takes orders for merchandise by mail, telephone or computer to ship ordered merchandise within the time stated in its advertising. If no time is stated, the company must send the merchandise within 30 days of receiving the properly completed order. If a company is unable to ship the order before the deadline, it must promptly send the

consumer an option notice offering the choice of agreeing to a revised shipping date or canceling the order and receiving a prompt refund. When there will be a subsequent delay, the company must send a second option notice and, if the consumer does not respond, must cancel the order and issue a prompt refund. (The delay notice also must give the consumer a cost-free method of responding.)

The FTC's court pleading alleges that the defendants repeatedly violated the rule and the recordkeeping provisions of the 1996 order in the processing and selling of their products, such as the Static Duster, the Moving Train Watch, the Sky Glider (a glider type indoor exerciser), the Fuji Pillow, and Total Perfection (an electric depilatory device). The company advertised these products nationally on TV and in print ads in publications such as TV Guide, USA Today, Family Circle and newspapers such as the Chicago Tribune, St. Louis Post- Dispatch and the Denver Post. The FTC alleged that the defendants violated the Mail or Telephone Order by sending delay notices late, delaying shipment without getting the consumer's agreement to do so, or shipping merchandise after the revised shipment date and without the consumer's consent to further the delay.

The Commission staff was assisted in its investigation by the Western Virginia Better Business Bureau in Roanoke, Virginia.

The Commission vote to authorize the Department of Justice to file the modified consent decree on behalf of the FTC was 4-0. The modified consent decree was filed on September 1, 1999 in the U.S. District Court for the Western District of Virginia, Roanoke Division, and signed by Judge James C. Turk.

---

NOTE: This consent decree is for settlement purposes only and does not constitute an admission by the defendants of a law violation. Consent decrees have the force of law when signed by the judge.

Copies of the court-filed consent and other documents pertaining to Telebrands are available from the FTC's Consumer Response Center, Room 130, 600 Pennsylvania Avenue, N.W., Washington, D.C. 20580; 1-877-FTC-HELP (877-382-4357); TDD for the hearing impaired 1-866-653-4261. To find out the latest news as it is announced, call the FTC NewsPhone recording at 202-326-2710. Copies of news releases also are available on the FTC's web site at *http://www.ftc.gov*

MEDIA CONTACT:
> Brenda Mack
> *Office of Public Affairs*
> 202-326-2182

STAFF CONTACT:
> Lawrence Hodapp or Joel Brewer
> *Bureau of Consumer Protection*
> 202-326-3105 or 202-326-2967

(FTC Matter No. 982 3106)
(Civil Action No. 96-0827-R)
(Telebrands2)

# Exhibit C



# Exhibit D



## Whiten Your Teeth With The Power Of Light!

White Light. It's about whitening your teeth in less than 10 minutes. You're going out for a special night on the to
you're having a special event today and you want to look your best. And whiter brighter smile can help you look y

Let's face it, our teeth become dull and yellow over time because of the things we eat and drink. You may even h
some of the other tooth whitening products which can take days, or weeks to whiten your teeth. Professional one
whitening  treatments charge up to $500 or more. Now the revolutionary White Light system, with US and worldw
patents pending, can be the home solution for millions of Americans because it's affordable and its quick. It's rev
because it whitens your teeth in less than 10 minutes. So if you're going out for a special night on the town or you
a special event today or you just want to have a whiter and brighter smile so you can look your best, now you ca
whiter teeth in just minutes with White Light.

And if you're one of millions with sensitive teeth, White Light is perfect for you because it works so fast, your teeth

have time to become sensitive. It's more than just about tooth whitening. IT'S A NEW WAY TO WHITER TEETH THAN 10 MINUTES. Order now.

## *Order Now And Get A  Better Deal!

Order now and we'll send you a second White Light FREE, all you pay is the additional shipping and handling. So TWO White Lights for only $29.99, that's just $14.99 each!

 **Order Online Now** or Phone 1-800-354-3891
Privacy Policy | Customer Service
